IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:17-CV-144-D

LENTON CREDELLE BROWN, )
)
              Plaintiff, )
)
v. ) **ORDER**
)
GOODWILL INDUSTRIES OF EASTERN )
NORTH CAROLINA, INC., )
)
             Defendant. )

On October 17, 2017, Lenton Credelle Brown ("Brown" or "plaintiff"), a pro se plaintiff proceeding in forma pauperis [D.E. 1, 4], filed a complaint against Goodwill Industries of Eastern North Carolina, Inc. ("defendant" or "Goodwill") claiming violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII") [D.E. 5]. On December 4, 2017, Goodwill moved to dismiss Brown's complaint for failure to state a claim [D.E. 12] and filed a supporting memorandum [D.E. 13]. On January 22, 2018, Brown responded in opposition [D.E. 17]. On February 5, 2018, Goodwill replied [D.E. 18].[1] As explained below, the court grants Goodwill's motion and dismisses the complaint without prejudice for failure to state a claim upon which relief can be granted.

I.

On March 3, 2016, Brown (an African-American male) began working for Goodwill as a

---

[1] Brown seeks leave to file a sur-reply [D.E. 19]. The court denies the motion. See Local Civil Rule 7.1(f)–(g).

part-time retail manager at a Goodwill store in Kinston, North Carolina. See Compl. [D.E. 5] 2, 12; Def.'s Ex. 1 [D.E. 13-1] 1. On July 29, 2016, Brown observed a white female employee (Julia Cunningham) "in the ladies bathroom talking on her cellphone facing me with the bathroom door open." Compl. 3; see id. 8; Def.'s Ex. 1 [D.E. 13-1] 1. Brown confirmed that Cunningham was "on the clock[,] . . . . and sent District Manager Larelle an email with the time she had clocked back in from lunch and the fact that I witnessed her stealing time on the clock by talking on her cellphone with the bathroom door open." Compl. 3. Goodwill terminated Cunningham's employment on an unspecified date. Id. 12.

Cunningham was "friends both inside and outside of work" with another manager (Keisha) and employee (Keotta). Id. 4. When Brown was hired, "Larelle . . . warned [him] about how they set people up." Id. 7. Brown had numerous unpleasant interactions with both Cunningham and Keotta. Id. 4–7. Apparently Keotta had reported several concerns for customer and employee safety to Larelle, including "customers shopping in waste all day until 5 p.m.[,]" "a little boy [who] had a nose bleed near the toy section," and an incident involving unidentified "red spots" on dollar bills. Id. 5–6, 8–10. Brown calls these reports "bogus." Id.

After Brown reported to the district manager that Cunningham had been talking on her cell phone while on the clock, Keotta "accused Brown of harassing her *in retaliation.*" Id. 6–7 (emphasis in original). According to Brown, "[i]t is against [Goodwill] policy to retaliate against any emp[l]oyee for good faith reporting of violations of the Code of Conduct." Id. 7. Brown contends that Goodwill's investigation into Keotta's complaint against Brown "was . . . biased and racist." Id. 7–8, 11. On August 2 or 3, 2016, Goodwill terminated Brown's employment. Compare Compl. 2 (alleging termination date of August 3, 2016), with Def.'s Ex. 1 [D.E. 13-1] 1 (alleging termination date of August 2, 2016).

part-time retail manager at a Goodwill store in Kinston, North Carolina. See Compl. [D.E. 5] 2, 12; Def.'s Ex. 1 [D.E. 13-1] 1. On July 29, 2016, Brown observed a white female employee (Julia Cunningham) "in the ladies bathroom talking on her cellphone facing me with the bathroom door open." Compl. 3; see id. 8; Def.'s Ex. 1 [D.E. 13-1] 1. Brown confirmed that Cunningham was "on the clock[,] . . . . and sent District Manager Larelle an email with the time she had clocked back in from lunch and the fact that I witnessed her stealing time on the clock by talking on her cellphone with the bathroom door open." Compl. 3. Goodwill terminated Cunningham's employment on an unspecified date. Id. 12.

Cunningham was "friends both inside and outside of work" with another manager (Keisha) and employee (Keotta). Id. 4. When Brown was hired, "Larelle . . . warned [him] about how they set people up." Id. 7. Brown had numerous unpleasant interactions with both Cunningham and Keotta. Id. 4–7. Apparently Keotta had reported several concerns for customer and employee safety to Larelle, including "customers shopping in waste all day until 5 p.m.[,]" "a little boy [who] had a nose bleed near the toy section," and an incident involving unidentified "red spots" on dollar bills. Id. 5–6, 8–10. Brown calls these reports "bogus." Id.

After Brown reported to the district manager that Cunningham had been talking on her cell phone while on the clock, Keotta "accused Brown of harassing her *in retaliation.*" Id. 6–7 (emphasis in original). According to Brown, "[i]t is against [Goodwill] policy to retaliate against any emp[l]oyee for good faith reporting of violations of the Code of Conduct." Id. 7. Brown contends that Goodwill's investigation into Keotta's complaint against Brown "was . . . biased and racist." Id. 7–8, 11. On August 2 or 3, 2016, Goodwill terminated Brown's employment. Compare Compl. 2 (alleging termination date of August 3, 2016), with Def.'s Ex. 1 [D.E. 13-1] 1 (alleging termination date of August 2, 2016).

On October 3, 2016, Brown filed a discrimination charge with the EEOC, claiming retaliatory discharge and discrimination on the basis of race and sex. [D.E. 13-1] 1. On July 17, 2017, the EEOC issued Brown a notice of dismissal and right to sue. Id. 2–3.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc.

3

v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The standard used to evaluate the sufficiency of a pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano, 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); see Iqbal, 556 U.S. at 677–83; Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

A.

To plausibly allege retaliation in violation of Title VII, an employee must allege that: (1) he engaged in protected activity; (2) his employer took an action against him that a reasonable employee would find materially adverse; and, (3) a casual connection between the protected activity and the adverse employment action. See DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015); Boyer-Libero v. Fontainbleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc); Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 410 (4th Cir. 2013); see also Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362–63 (2013); Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68–69 (2006). To survive a motion to dismiss, a Title VII plaintiff must plausibly allege a statutory claim, not a prima facie case. See McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585–88 (4th Cir. 2015).

In relevant part, Title VII's retaliation provision prohibits an employer from discriminating against any individual "because he has opposed any practice made an unlawful employment practice

4

by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "Oppositional activity must be directed to 'an unlawful employment practice' under Title VII." DeMasters, 796 F.3d at 417; see Boyer-Liberto, 786 F.3d at 282; Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011); Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998). An "employee is protected when [he] opposes not only employment actions actually unlawful under Title VII but also employment actions [he] reasonably believes to be unlawful [under Title VII]." DeMasters, 796 F.3d at 417 (quotation omitted).

Brown's complaint to Larelle about Cunningham's use of her personal phone during her shift did not oppose any employment practice actually unlawful under Title VII, and Brown could not have reasonably believed that such conduct was unlawful under Title VII. See, e.g., Coleman, 626 F.3d at 191; Bonds, 629 F.3d at 383–84; Supinger v. Virginia, 167 F. Supp. 3d 795, 813 (W.D. Va. 2016); McCray v. Huntington Ingalls Inc., No. 4:12CV20, 2012 WL 2343041, at *5 (E.D. Va. June 19, 2012) (unpublished). Thus, Brown has failed to plausibly allege a Title VII retaliation claim.

B.

As for Brown's race-discrimination claim and sex-discrimination claim, an employer cannot "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To survive a motion to dismiss, a Title VII plaintiff must plausibly allege a statutory claim, although she need not allege a prima facie case under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See McCleary- Evans v. Md. Dept. of Transp., 780 F.3d 582, 584–88 (4th Cir. 2015); Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

5

Brown alleges that he suffered adverse disciplinary action due to his race and sex. To plausibly allege discrimination in the enforcement of employee disciplinary measures under Title VII, an employee must plausibly alleged that: "(1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees." Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); see Hurst v. District of Columbia, 681 F. App'x 186, 190 (4th Cir. 2017) (per curiam) (unpublished). "[N]aked allegations" of a causal connection between the employee's color, race, sex, religion, or national origin and the alleged discrimination do not state a plausible Title VII claim. See McCleary-Evans, 780 F.3d at 585–86 (quotation omitted).

Viewing the allegations of Brown's complaint in the light most favorable to him, Brown fails to plausibly allege the second and third elements of his claim. Brown alleges that he is an African-American male who was discharged because Goodwill "verified a complaint from a Black-female subordinate employee, who reported . . . that [Brown] had harassed and threatened to discharge [the employee]." See Compl. 5. Brown, however, fails to plausibly allege that his conduct was comparable in seriousness to misconduct of employees outside his protected class, or that the disciplinary measures enforced against him were more severe than those enforced against those other employees. To the extent Brown contends that "Co-Manager Keisha" is the appropriate comparator because she "assisted Julia Cunningham in stealing time on the clock by having her relocate from the bathroom to break room while continuing her conversation on her cellphone while clocked in for work[,]" Pl.'s Resp. Opp'n Mot. Dismiss [D.E. 17] 3, Brown does not allege that any employee ever filed a complaint against Keisha. Moreover, Brown alleges that "Co-manager Keisha, Kieotta

6

Williams, and Julia Cunningham had a past history of setting past managers up resulting in numerous terminations[,]" Pl.'s Resp. Opp'n Mot. Dismiss [D.E. 17] 5; see Compl. 7, without describing the race or sex of any of those managers. Finally, Brown fails to allege any facts to show Goodwill was biased against him based on his race or sex in conducting its investigation concerning the complaint. Brown's allegation that the person who conducted the investigation into the complaint against him "was so biased and racist[,]" Compl. 8, is precisely the type of "naked" allegation which cannot survive a motion to dismiss. See McCleary-Evans, 780 F.3d at 585–86. Accordingly, Brown has failed to plausibly allege a Title VII discrimination claim.

II.

In sum, the court DENIES plaintiff's motion for leave to file a sur-reply [D.E. 19], GRANTS defendant's motion to dismiss [D.E. 12], and DISMISSES the complaint without prejudice. Brown may file an amended complaint no later than June 29, 2018.

SO ORDERED. This **29** day of May 2018.

JAMES C. DEVER III
Chief United States District Judge