IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:17-CV-144-D

| | |
|---|---|
| LENTON CREDELLE BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GOODWILL INDUSTRIES OF EASTERN | ) |
| NORTH CAROLINA, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER**

On October 17, 2017, Lenton Credelle Brown ("Brown" or "plaintiff"), a pro se plaintiff proceeding in forma pauperis [D.E. 1, 4], filed a complaint against Goodwill Industries of Eastern North Carolina, Inc. ("defendant" or "Goodwill") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") [D.E. 5]. On December 4, 2017, Goodwill moved to dismiss Brown's complaint for failure to state a claim [D.E. 12]. On May 29, 2018, the court dismissed Brown's complaint without prejudice [D.E. 20].

On June 29, 2018, Brown filed an amended complaint [D.E. 21]. On July 9, 2018, Brown moved to submit an amended complaint that conformed to the Federal Rules of Civil Procedure [D.E. 24]. On August 3, 2018, Goodwill moved to dismiss Brown's amended complaint for failure to state a claim [D.E. 25] and filed a memorandum in support [D.E. 26]. On November 2, 2018, Brown responded in opposition [D.E. 32]. On November 26, 2018, Goodwill replied [D.E. 35]. As explained below, the court grants Goodwill's motion and dismisses the amended complaint without prejudice for failure to state a claim upon which relief can be granted, and grants Brown's motion to file another amended complaint.

I.

On March 3, 2016, Brown, an African-American male, began working for Goodwill as a part-time retail manager at a Goodwill store in Kinston, North Carolina. See Compl. [D.E. 5] 2; Def.'s Ex. 1 [D.E. 13-1] 1; Am. Compl. [D.E. 21] 2, 5. Brown worked at the store with Keisha ("Keisha"), his co-manager, Julia Cunningham ("Cunningham"), and Keotta Williams ("Williams"). See [D.E. 21] 1. On July 29, 2016, Brown observed Cunningham, a white female, talking on her cell phone to her boyfriend instead of working. See [D.E. 5] 3, 8; Def.'s Ex. 1 [D.E. 13-1] 1; [D.E. 21] 2, 9. Brown reported Cunningham for "stealing time on the clock." [D.E. 21] 2.

Cunningham was "friends both inside and outside of work" with Williams and Brown's co-manager, Keisha. [D.E. 5] 4; cf. [D.E. 21] 2. When Goodwill hired Brown, Brown alleges that the district manager "warned [him] about how [Cunningham, Williams, and Keisha] set people up." [D.E. 5] 7; [D.E. 21] 10. After Brown reported to the district manager that Cunningham had been talking on her cell phone while on the clock, Brown alleges that Williams and Keisha made false complaints against him, including Williams "accus[ing] Brown of harassing her *in retaliation* [for reporting Cunningham]." [D.E. 21] 9–10; see [D.E. 5] 6–7; [D.E. 21] 1. For example, Williams claimed that Brown threatened to fire her if she "exposed certain safety violations." [D.E. 21] 4. Nevertheless, Williams reported several concerns for customer and employee safety to the district manager, including "customers shopping in waste all day," "a little boy [who] had a nose bleed near the toy section" that was not promptly cleaned, and an incident involving unidentified "red spots" on dollar bills. [D.E. 5] at 5–6, 8–10; see [D.E. 21] 4, 8–10. Brown calls these reports "bogus." [D.E. 5] 5, 8; [D.E. 21] 2, 8. Brown also mentions that Williams reported Brown for "looking through the glass portion of a door" to observe the sales floor, something that Williams perceived as harassment. [D.E. 21] 5.

Goodwill investigated Williams's and Keisha's claims concerning Brown. Brown contends that Goodwill's investigation into Williams's complaint against Brown was "biased and racist." [D.E. 5] 7–8, 11; [D.E. 21] 10. For example, Brown contends that Charles Bailey, Goodwill's Head of Compliance, never interviewed Brown concerning Williams's allegations because Brown is an African-American male. See [D.E. 21] 2–3, 6 (comparing Goodwill's investigation concerning Brown with Goodwill's investigation of "Cheryl, a light skinned female who was also accused of harassment"). Additionally, Brown alleges that Goodwill never advised him about his rights, never told him how to file a complaint with Goodwill internally, never gave him "the opportunity to appeal the decision," and never informed of the charges against him. Id. at 10–11. On August 2 or 3, 2016, based on the investigation, Goodwill terminated Brown's employment. Compare [D.E. 5] 2 (alleging termination date of August 3, 2016), with Def.'s Ex. 1 [D.E. 13-1] 1 (alleging termination date of August 2, 2016). According to Brown, he reported Cunningham's cell phone violation in good faith, and "[i]t is against [Goodwill] policy to retaliate against any emp[l]oyee for good faith reporting of violations of the Code of Conduct." [D.E. 5] 7; [D.E. 21] 10.

On October 3, 2016, Brown filed a discrimination charge with the EEOC, claiming retaliatory discharge and discrimination on the basis of race and in violation of Title VII. [D.E. 13-1] 1. On July 17, 2017, the EEOC issued Brown a notice of dismissal and right to sue. Id. at 2–3. On May 29, 2018, the court dismissed Brown's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted [D.E. 20]. On June 29, 2018, Brown filed an amended complaint. See [D.E. 21].

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–

63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302; see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The standard used to evaluate the sufficiency of a pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted).

Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano, 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); see Iqbal, 556 U.S. at 677–83; Coleman, 626 F.3d at 190; Nemet Chevrolet, Ltd., 591 F.3d at 255–56; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

A.

To state a prima facie claim of retaliation in violation of Title VII, an employee must allege that (1) he engaged in protected activity; (2) his employer took an action against him that a reasonable employee would find materially adverse; and, (3) a casual connection between the protected activity and the adverse employment action. See Burlington N. & Sante Fe Ry. v. White, 548 U.S. 53, 67–70 (2006); Savage v. Maryland, 896 F.3d 260, 276 (4th Cir. 2018); Strothers v. City of Laurel, Md., 895 F.3d 317, 327 (4th Cir. 2018); DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015); Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc); Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 410 (4th Cir. 2013); Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004), abrogated on other grounds by Foster, 787 F.3d 243; Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003); Spriggs v. Diamond Auto Glass, 242 F.3d 179, 190 (4th Cir. 2001); see also Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362–63 (2013). To survive a motion to dismiss, a Title VII plaintiff need only plausibly allege a statutory claim, not a prima facie case. See Woods v. City of Greensboro, 855 F.3d 639, 648 (4th Cir. 2017); McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 585–88 (4th Cir. 2015); cf. 42 U.S.C. § 2000e-3(a).

In relevant part, Title VII's retaliation provision prohibits an employer from discriminating against any individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner

5

in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title VII protects two kinds of activities: opposition and participation. See id.; Netter v. Barnes, 908 F.3d 932, 937–38 (4th Cir. 2018); Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998). "[O]ppositional activity must be directed to 'an unlawful employment practice' under Title VII . . . ." DeMasters, 796 F.3d at 417; see Netter, 908 F.3d at 937–38; Boyer-Liberto, 786 F.3d at 282; Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011); Laughlin, 149 F.3d at 259. An "employee is protected when [he] opposes not only employment actions actually unlawful under Title VII but also employment actions [he] reasonably believes to be unlawful [under Title VII]." DeMasters, 796 F.3d at 417 (quotation and alteration omitted); see Netter, 908 F.3d at 937–38; Boyer-Liberto, 786 F.3d at 282. Participation is defined in Title VII as "making a charge, testify[ing], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); see Laughlin, 149 F.3d at 259.

Brown contends that reporting Cunningham's use of a cell phone during work hours constitutes protected activity under Title VII. See [D.E. 32] 4 ("When I sent an e[-]mail to District Manager Larelle Bonaparte informing her that I had witnessed Julia Cunningham stealing time on the clock, I was in effect making a charge, and assisting or participating in a [de facto] investigation under Title VII at the employer[']s request."). Brown is mistaken. Brown's alleged report is not "participation" under Title VII. See 42 U.S.C. § 2000e-3(a); Netter, 908 F.3d at 937–38; Laughlin, 149 F.3d at 259.

As for oppositional activity, Brown does not plausibly allege that he opposed any unlawful employment practice under Title VII, and Brown could not have reasonably believed that Cunningham's conduct of "stealing time on the clock" was unlawful under Title VII. See, e.g., Coleman, 626 F.3d at 191; Bonds, 629 F.3d at 383–84; Supinger v. Virginia, 167 F. Supp. 3d 795,

812–13 (W.D. Va. 2016); McCray v. Huntington Ingalls Inc., No. 4:12CV20, 2012 WL 2343041, at *5 (E.D. Va. June 19, 2012) (unpublished); Mixon v. Charlotte-Mecklenburg Sch., No. 3:11-CV-228-MOC-DSC, 2011 WL 5075808, at *6 (W.D.N.C. Aug. 5, 2011) (unpublished) ("Generalized complaints about disputes or annoyances in the workplace are insufficient [to state a claim for retaliation under Title VII"). In short, by reporting Cunningham for "stealing time on the clock," Brown did not oppose conduct made unlawful by Title VII. Thus, Brown has failed to plausibly allege in his amended complaint a Title VII retaliation claim. Accordingly, the court grants Goodwill's motion to dismiss Brown's retaliation claim.

## B.

As for Brown's race-discrimination claim and sex-discrimination claim, an employer cannot "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To state a claim for discrimination in the enforcement of employee disciplinary measures under Title VII, an employee must show "(1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees." Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); see Hurst v. Dist. of Columbia, 681 F. App'x 186, 190 (4th Cir. 2017) (per curiam) (unpublished). "[N]aked allegations" of a causal connection between the employee's color, race, sex, religion, or national origin and the alleged discrimination do not state a plausible Title VII claim. See McCleary-Evans, 780 F.3d at 585–86 (quotation omitted). To survive a motion to dismiss, a Title VII plaintiff need only plausibly allege a statutory claim, not a prima facie case under McDonnell Douglas Corp. v. Green, 411 U.S.

7

792 (1973). See McCleary-Evans, 780 F.3d at 584–88; Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 764–65 (4th Cir. 2003).

Brown alleges that he suffered adverse disciplinary action based on his race and sex (i.e., because he is an African-American male). Brown identifies four possible employees with whom he can be compared: Keisha, Cheryl, Williams, and "Mr. Frankie." See [D.E. 21] 2–3, 5; [D.E. 32] 2–3, 6.

As for Keisha, Brown has failed to plausibly allege that Keisha's alleged misconduct is similarly severe as compared to Brown's alleged conduct. Brown alleges that Keisha assisted Cunningham "in stealing time on the clock," knew that "Cunningham was mixing prescription drugs and alcohol and was running around partying with her," lied to the district manager, and had "a history of setting people up and costing people their jobs." [D.E. 21] 2; [D.E. 32] 4. Brown fails to allege how Keisha's alleged misconduct is similarly severe to his alleged misconduct. Moreover, Brown fails to identify any individuals that Keisha set up or explain the circumstances surrounding those individuals' terminations. Finally, Brown fails to allege what, if any, disciplinary action Goodwill took against Keisha; therefore, the court cannot compare Brown's termination with any disciplinary action taken against Keisha. Accordingly, Keisha is not an appropriate comparison.

As for Cheryl, Brown fails to allege the nature of and circumstances surrounding the disciplinary action taken against Cheryl. Brown alleges only that Goodwill investigated Cheryl, a white female, for harassment. See [D.E. 32] 4–5, 7. Brown's allegations do not plausibly show that Cheryl engaged in similarly serious misconduct. Brown also fails to allege what, if any, disciplinary action Goodwill took against Cheryl. Brown only alleges that Goodwill investigators interviewed Cheryl about the allegations of harassment. Therefore, Brown does not plausibly allege that the disciplinary measures taken against him were more severe than those taken against Cheryl.

8

Accordingly, Cheryl is not an appropriate comparison.

As for Williams, Brown alleges in his response that Williams "was allegedly part of a theft ring operating inside of the store." [D.E. 32] 9. Brown fails to allege that Goodwill knew of Williams's misconduct; therefore, Williams's alleged misconduct cannot be compared to Brown's misconduct. Stated differently, Brown does not allege that Goodwill knew of Williams's misconduct and affirmatively decided not to take disciplinary action against her. Therefore, Brown does not plausibly allege that Goodwill took more severe disciplinary action against Brown based on his conduct as compared to Williams's conduct. Accordingly, Williams is not an appropriate comparison.[1]

As for Frankie, Brown alleges that Frankie, "the third highest paid individual in the store," was not disciplined for failing to clean up "sewage and blood . . . in a timely manner." [D.E. 32] 6. Brown does not allege, however, that Frankie engaged in similarly severe conduct as Brown's alleged harassment. Moreover, Brown fails to allege that Frankie is not in the same protected class as Brown. Accordingly, Frankie is not an appropriate comparison.

Finally, Brown still fails to plausibly allege any facts that show that Goodwill was biased against him based on his race or sex in conducting its investigation concerning the complaint. As before, Brown asserts the conclusion that the process was "biased and racist." [D.E. 21] 3, 10. Brown's claim, however, is merely a "naked allegation" that remains insufficient to state a claim for discrimination under Title VII. See McCleary-Evans, 780 F.3d at 585–86. Accordingly, the court grants Goodwill's motion to dismiss Brown's race-discrimination and sex-discrimination claims.

---

[1] Brown also alleges that Williams "voluntarily quit" before Goodwill learned of Williams's "theft ring." Thus, according to Brown, Goodwill did not have an opportunity to take disciplinary action against Williams while she was employed. See [D.E. 21] 4. These allegations do not help Brown.

## C.

To the extent that Brown raises new claims under Title VII in his amended complaint that he did not raise in his EEOC charge (e.g., color discrimination), see generally [D.E. 21]; [D.E. 26-1], the court lacks subject-matter jurisdiction to consider such claims. See Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009). Moreover, to the extent that Brown raises new claims in his response (e.g., claims under 42 U.S.C. § 1981), see [D.E. 32], the court can only address claims raised in Brown's amended complaint. See, e.g., Cole v. Wells Fargo Bank, N.A., No. 1:15-CV-39-MR, 2016 WL 737943, at *4 n.9 (W.D.N.C. Feb. 23, 2016) (unpublished); Smith v. White, No. 1:09CV61, 2009 WL 1351119, at *3 (M.D.N.C. May 13, 2009) (unpublished).

## III.

In sum, the court GRANTS Goodwill's motion to dismiss [D.E. 25], and DISMISSES the amended complaint [D.E. 21] without prejudice. The court also GRANTS Brown's motion to file an amended complaint [D.E. 24]. Brown may file an amended complaint no later than January 23, 2019.

SO ORDERED. This _2_ day of January 2019.

JAMES C. DEVER III
United States District Judge